**Rashik Ali TAYLOR, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–05–01183–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 2, 2007.

Discretionary Review Granted
Nov. 14, 2007.

---

Nicole DeBorde, Houston, TX, for Appellant.

Charles A. Rosenthal, Jr., District Attorney—Harris County, Carol M. Cameron, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, JENNINGS, and BLAND.

## OPINION

JANE BLAND, Justice.

Appellant Rashik Ali Taylor pleaded not guilty to the first-degree felony offense of aggravated sexual assault. *See* TEX. PEN. CODE ANN. § 22.021 (Vernon Supp.2006). A jury found Taylor guilty and assessed punishment at ten years' confinement. In two issues, Taylor contends (1) the trial court abused its discretion in admitting hearsay testimony, and (2) the trial court erred in denying his request for an extraneous offense instruction in the jury charge. We conclude that (1) the trial court did not abuse its discretion in admitting the hearsay testimony under Texas Rule of Evidence 803(4), and (2) the trial court did not err in denying Taylor's request for an extraneous offense instruction in the jury charge because the extraneous offenses in this case constitute same transaction contextual evidence. We therefore affirm.

## Background

On the night of March 27, 2005, J.B. was staying at a hotel with her mother and an ex-boyfriend of her aunt known as "Uncle Lazy." J.B. was thirteen years old at the time. Mom, Lazy, and J.B. began drinking a bottle of Mad Dog wine that Mom had purchased earlier that night.[1] Mom then began suffering drug withdrawal symptoms. Lazy and J.B. drove Mom to an apartment complex so that she could work as a prostitute and earn money to buy drugs. Lazy and J.B. returned the van they were using to its owner and went back to their hotel room where Lazy's friend Freddie joined them.

A short time later, Mom called J.B. and informed her that William Zapata, an ex-boyfriend, had kidnapped her and that she needed J.B. to call "Skinny Man" to pick her up. J.B. identified "Skinny Man" at trial as Taylor, the defendant in this case. J.B. called Taylor and he agreed to come to her hotel room after he showered. J.B. used cocaine while she waited for Taylor. After Taylor arrived, he offered J.B. a line of cocaine but she declined. Taylor then told Lazy and Freddie to take his car and pick up Mom. Lazy, however, refused to leave J.B. alone with Taylor. Taylor then suggested that they should all go pick up Mom together. Freddie stayed behind in case Mom came back on her own.

As soon as Taylor and J.B. got in the car, Taylor placed his hand on J.B.'s leg but she pushed it away. Taylor, Lazy, and J.B. then drove to Taylor's hotel room. When they arrived, Taylor told J.B. to get out and come inside because he needed help with something. Inside the hotel room, Taylor pulled out a gun from behind his bed and put it in the waistband of his pants. Taylor then sat down and told J.B. that he was going to move in with her and Mom and that he wanted to spend more time with her. Taylor and J.B. then left the hotel room. As they were leaving, Taylor saw his friend "E" and asked him to join them. Taylor, E, Lazy, and J.B. then drove to another apartment complex.

When they arrived, Taylor and E told Lazy to get out of the car. J.B. noticed that Taylor had drawn his gun so she got

---

1. The actual names of Mom, Uncle Lazy, and E (mentioned *infra*) are not contained in the record. For the purposes of this opinion, J.B.'s mother will be referred to as "Mom," "Uncle Lazy" will be referred to as "Lazy," and "E" will be referred to as "E."

out of the car as well. Taylor pointed the gun at Lazy but J.B. jumped in front of him and held onto Lazy. J.B. finally released Lazy when Taylor put the gun to her head. Taylor then put J.B. back in the car, but she climbed out of a window and ran through the apartment complex. As J.B. was running away, she heard gunshots and thought that Taylor had probably killed Lazy. J.B. noticed that Taylor was chasing her so she stopped because she did not think she could outrun him. J.B. refused to go with Taylor so he picked her up and brought her back to the car. Taylor, E, and J.B. then drove back to Taylor's hotel room.

When they arrived at the hotel, J.B. tried to run away again but Taylor quickly caught her and brought her upstairs to his room. J.B. was hysterical when she got inside the room and she repeatedly asked Taylor and E to let her go. At one point, J.B. tried calling Lazy but Taylor grabbed her by the throat and forced her to hang up the phone. Taylor and E then went outside to talk. J.B. went to the restroom and took off her pants to clean off some mud. Taylor then opened the restroom door and told J.B. to come out. J.B. tried to put her pants back on but Taylor told her that she should feel comfortable around him. J.B. and Taylor sat down and began talking. Taylor explained that he had not killed Lazy, but instead given him his car so that he could pick up Mom. Taylor and J.B. then did a few lines of cocaine together.

Taylor then told J.B. to lie on the bed. When she refused, Taylor removed the gun from his waistband and laid it on the nightstand. Taylor then told J.B. to take off her clothes. J.B. felt threatened so she complied with Taylor's requests. Taylor and J.B. then had intercourse twice. J.B. told Taylor to stop and tried to push him away, but she gave up when she realized

that struggling would only prolong the ordeal. Afterwards, J.B. and Taylor got dressed and sat on the bed. Taylor tossed a bag of crack cocaine on J.B.'s lap and told her that it was for Mom. Taylor then drove J.B. back to her hotel where she took two Xanax and went to bed.

J.B. told Mom and Lazy about the incident the next day but they did not call the police. J.B. refused to attend school for a few days because of the incident. An official at J.B.'s school eventually called to see how she was doing. J.B. told the official that she thought Taylor might have raped her. After J.B. returned to school, she divulged the entire story and the school official called the police.

### Hearsay

In his first issue, Taylor contends the trial court abused its discretion in admitting the hearsay testimony of Denise Volet. Volet is a licensed professional counselor who began treating J.B. in June 2005. At trial, the prosecutor asked Volet about the details that J.B. had given her concerning the sexual assault. Taylor objected on the ground that the testimony would constitute hearsay. The State responded that Volet's testimony was admissible under the exception to the hearsay rule for statements made for the purpose of medical diagnosis or treatment. *See* Tex.R. Evid. 803(4). After the trial court overruled Taylor's hearsay objection to Volet's testimony, Volet testified as follows:

> [Prosecutor:] What did [J.B.] tell you about what had happened?
>
> [Volet:] She referred to the gentleman as Skinny. That's the name that she had for him. And how basically her mother had sent her to go with him. They went to a motel. She talked about being in a car. Talked about there being a gun. She talked about going up-

stairs into the room. Being afraid, knowing something wasn't right and was going to happen. Skinny asking her to take her clothes off and her telling him she didn't want to. And trying to resist. She talked about the gun being on the nightstand on the table. Her taking her clothes off. Getting on the bed. Skinny having sex with her. That it hurt. And she tried to get away from him and just couldn't. Then when it was over she talked about, you know, leaving. Being in the car. At some point the gun was in her lap for some reason. And she talked about that she had the thought of I should shoot him now. She talked about doing drugs. Doing cocaine. I remember cocaine. I don't remember exactly what it was they drank. But she had been drinking and doing drugs. Had been given those things. She remembered getting out of the car. And what's typical of a victim of rape or abuse.

[Defense Counsel:] I object to the narrative nature of this testimony.

[Trial Court:] Sustained.

[Prosecutor:] What issues were you addressing with her regarding the rape? What was her recollection to the rape?

[Volet:] Anger, number one. She was a very angry young lady. Betrayal she felt from her mother.

### A. Preservation

 The State asserts that Taylor's objection to Volet's testimony was not sufficiently specific to preserve this issue for appeal. See TEX.R.APP. P. 33.1(a). As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. Id. When the State seeks to introduce testimony, it bears the burden of establishing the admissibility of such evidence. Kelly v. State, 824 S.W.2d 568, 573 (Tex. Crim.App.1992). The proponent of hearsay testimony must point to a hearsay exception before the court can admit such testimony. Perez v. State, 113 S.W.3d 819, 827 n. 4 (Tex.App.-Austin 2003, pet. ref'd). The proponent of hearsay testimony therefore has the burden of laying the proper predicate and establishing its admissibility. Id. At trial, Taylor objected to Volet's testimony on the ground that it would constitute hearsay. Taylor asserted his hearsay objection in a timely manner and with sufficient specificity to make the trial court aware of his complaint. See TEX.R.APP. P. 33.1(a). The burden then passed to the State to demonstrate the admissibility of the testimony. See Kelly, 824 S.W.2d at 573; Perez, 113 S.W.3d at 827 n. 4. The State responded that Volet's testimony was admissible under the exception to the hearsay rule for statements made for the purpose of medical diagnosis or treatment. See TEX.R. EVID. 803(4). We therefore hold that Taylor's hearsay objection was sufficient to preserve this issue for appeal. See Long v. State, 800 S.W.2d 545, 548 (Tex.Crim.App.1990); Carter v. State, 717 S.W.2d 60, 76 (Tex.Crim.App.1986).

### B. Hearsay

 We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. Zuliani v. State, 97 S.W.3d 589, 595 (Tex.Crim.App. 2003); Roberts v. State, 29 S.W.3d 596, 600 (Tex.App.—Houston [1st Dist.] 2000, pet. ref'd). A reviewing court should not reverse unless the record shows a clear abuse of discretion. Zuliani, 97 S.W.3d at 595; Roberts, 29 S.W.3d at 600. An abuse of discretion occurs only when the trial

judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Zuliani,* 97 S.W.3d at 595; *Roberts,* 29 S.W.3d at 600.

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX.R. EVID. 801(d). Hearsay testimony is generally inadmissible at trial. TEX.R. EVID. 802. Texas Rule of Evidence 803(4) provides an exception to the hearsay rule for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." TEX.R. EVID. 803(4).

 Rule 803(4) is premised on the declarant's desire to receive an appropriate medical diagnosis or treatment, and the assumption that the declarant appreciates that the effectiveness of the diagnosis or treatment may depend on the accuracy of the information provided. *See Burns v. State,* 122 S.W.3d 434, 438 (Tex.App.—Houston [1st Dist.] 2003, pet. ref'd); *Perez,* 113 S.W.3d at 828; *Moore v. State,* 82 S.W.3d 399, 413 (Tex.App.-Austin 2002, pet. ref'd) (Patterson, J., concurring); *Sneed v. State,* 955 S.W.2d 451, 453 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd); *Fleming v. State,* 819 S.W.2d 237, 247 (Tex.App.—Austin 1991, pet. ref'd). "Thus, the declarant's motive in making the statement must be consistent with the purpose of promoting treatment." *Austin v. State,* 222 S.W.3d 801, 811 (Tex.App.-Houston [14th Dist.] 2007, pet. filed); *accord Jones v. State,* 92 S.W.3d 619, 623 (Tex.App.—Austin 2002, no pet.); *Sandoval v. State,* 52 S.W.3d 851, 856 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd). The witness, however, does not have to expressly state that the hearsay declarant recognized the need to be truthful in her statements for the medical treatment exception to apply. *Wright v. State,* 154 S.W.3d 235, 241 (Tex.App.—Texarkana 2005, pet. ref'd). Instead, the reviewing court must look to the record to determine if it supports a conclusion that the declarant understood the importance of honesty in the context of medical diagnosis and treatment. *See Beheler v. State,* 3 S.W.3d 182, 188–89 (Tex.App.—Fort Worth 1999, pet. ref'd).

## C. Rule 803(4) Analysis

 Volet testified that she is a licensed professional counselor[2] and has bachelor's degrees in psychology and sociology, and a master's degree in psychological counseling. She is also a certified mediator and a certified anger resolution therapist. Volet, however, is not a medical doctor or psychiatrist, nor is she under the supervision of a medical doctor or psychiatrist.

---

**2.** The Texas Occupations Code provides that the "practice of professional counseling" means:

> [T]he application of mental health, psychotherapeutic, and human development principles to:
> (1) facilitate human development and adjustment throughout life;
> (2) prevent, assess, evaluate, and treat mental, emotional, or behavioral disorders and associated distresses that interfere with mental health;
> (3) conduct assessments and evaluations to establish treatment goals and objectives; and
> (4) plan, implement, and evaluate treatment plans using counseling treatment interventions that include:
> (A) counseling;
> (B) assessment;
> (C) consulting; and
> (D) referral.

*See* TEX. OCC.CODE ANN. § 503.003 (Vernon 2004).

Volet began treating J.B. in June 2005, two months after the incident with Taylor. A therapist at the Child Advocacy Center referred J.B. to Volet for treatment because of conflicts of interest at the Child Advocacy Center stemming from their work with Child Protective Services. Volet testified that she was working with J.B. on issues concerning the resolution of the sexual assault, the resolution of mother/daughter issues, anger management, learning how to control her own behaviors, making the right choices, and judgment decisions. Volet also testified about common characteristics exhibited by children who experienced sexual abuse and the particular characteristics that J.B. had exhibited.

J.B. testified that she was receiving therapy for posttraumatic stress disorder and bipolar disorder.

Texas appellate courts have allowed licensed professional counselors and psychotherapists to testify under Texas Rule of Evidence 803(4). *See Wilder v. State*, 111 S.W.3d 249, 256–57 (Tex.App.-Texarkana 2003, pet. ref'd); *Puderbaugh v. State*, 31 S.W.3d 683, 685 (Tex.App.-Beaumont 2000, pet. ref'd); *Gohring v. State*, 967 S.W.2d 459, 461 (Tex.App.-Beaumont 1998, no pet.). In *Wilder v. State, Puderbaugh v. State*, and *Gohring v. State*, the courts focused on the declarant's understanding of the purpose of the therapy, and held that hearsay testimony is admissible under Rule 803(4) if the record contains evidence that the declarant understood that he or she was receiving therapy for the purpose of medical diagnosis or treatment. *Wilder*, 111 S.W.3d at 257 ("In view of the foregoing facts, we find that it is reasonable to infer that T.N.W. understood that she was receiving therapy for purposes of medical treatment in connection with the abuse and that her statements to Pruitt were made for purposes of medical diagno-sis and treatment."); *Puderbaugh*, 31 S.W.3d at 685 ("Brouwer acknowledged that in the course of treatment in counseling C.P., it had been conveyed to C.P. that the reason for seeing him was to help her with her emotional problems. Brouwer and C.P. discussed the importance of telling the truth to him, and C.P. understood the difference between telling the truth and telling a lie."); *Gohring*, 967 S.W.2d at 461 ("In the case of this witness, we hold the trial court did not err in admitting this evidence under Rule 803(4) because it would be a reasonable inference that C.G., who was a high school student, would have understood she was seeing Petite for the purpose of medical treatment in connection with the abuse, and that C.G.'s statements to Petite were made for the purpose of medical diagnosis or treatment.").

Additionally, we look to cases interpreting Federal Rule of Evidence 803(4) for guidance in interpreting Texas Rule of Evidence 803(4) because their language is identical. *See* FED.R.EVID. 803(4); TEX.R. EVID. 803(4); *see also Fairow v. State*, 943 S.W.2d 895, 902 n. 3 (Tex.Crim.App.1997) (Baird, J., concurring) ("Generally, the Texas Rules of Criminal Evidence were patterned after the Federal Rules of Evidence."); *Reed v. State*, 811 S.W.2d 582, 586 (Tex.Crim.App.1991) (noting that federal rules guide, but do not bind, state courts construing analogous Texas rules); *Montgomery v. State*, 810 S.W.2d 372, 376 n. 2 (Tex.Crim.App.1990) (stating that, when Texas rule duplicates federal rule, federal rule's interpretation should receive greater than usual deference); *Sandoval*, 52 S.W.3d at 856 ("Because of the absence of Texas case law addressing the applicability of rule 803(4) to statements made by one other than the patient, we look to cases interpreting Federal Rule of Evidence 803(4), which is identical to Texas rule 803(4), for guidance.").

The advisory committee note to federal Rule 803(4) provides that "[u]nder the exception the statement need not have been made to a physician[;] [s]tatements to hospital attendants, ambulance drivers, or even members of the family might be included." FED.R.EVID. 803(4) advisory committee's note. Federal courts addressing this issue have consistently held that Federal Rule of Evidence 803(4) can apply to statements made to psychotherapists for the purposes of medical diagnosis or treatment, even though the therapist is not a physician or nurse. *See United States v. Kappell*, 418 F.3d 550, 556–57 (6th Cir. 2005); *Danaipour v. McLarey*, 386 F.3d 289, 297 (1st Cir.2004); *Davignon v. Clemmey*, 322 F.3d 1, 8 n. 3 (1st Cir.2003); *Swinton v. Potomac Corp.*, 270 F.3d 794, 807–08 (9th Cir.2001); *United States v. Charley*, 189 F.3d 1251, 1270 n. 28 (10th Cir.1999); *United States v. Running Horse*, 175 F.3d 635, 638 (8th Cir.1999); *United States v. White*, 11 F.3d 1446, 1449 (8th Cir.1993); *Morgan v. Foretich*, 846 F.2d 941, 949–50 (4th Cir.1988).

In contrast, in *Perez v. State* and *Moore v. State*, the Austin Court of Appeals refused to allow the hearsay testimony of licensed professional counselors under Rule 803(4). *Perez*, 113 S.W.3d at 830; *Moore*, 82 S.W.3d at 405. In these two cases, the court interpreted the Rule 803(4) phrase, "reasonably pertinent to diagnosis or treatment," as a requirement that the witness be part of the medical profession or otherwise qualified to render a medical diagnosis or treatment. TEX.R. EVID. 803(4); *Perez*, 113 S.W.3d at 828, 830; *Moore*, 82 S.W.3d at 404–05. We disagree with the Austin court's narrow application of Rule 803(4) to exclude licensed professional counselors. *See Perez*, 113 S.W.3d at 828; *Moore*, 82 S.W.3d at 404–05.

Here, J.B. specifically testified that she was receiving therapy for posttraumatic stress disorder.[3] From this testimony, it is reasonable to infer that J.B. understood that she was receiving therapy to treat a medical condition caused by the sexual assault. *See* TEX. OCC.CODE ANN. § 503.003 (Vernon 2004) (stating that the "practice of professional counseling" means the application of mental health, psychotherapeutic, and human development principles to prevent, assess, evaluate, and treat mental, emotional, or behavioral disorders and associated distresses that interfere with mental health); *Kappell*, 418 F.3d at 556 ("We hold that Rule 803(4) covers statements made to a psychotherapist for pur-

---

**3.** According to the *Diagnostic and Statistical Manual of Mental Disorders* published by the American Psychiatric Association,

The essential feature of Posttraumatic Stress Disorder is the development of characteristic symptoms following exposure to an extreme traumatic stressor involving direct personal experience of an event that involves actual or threatened death or serious injury, or other threat to one's physical integrity; or witnessing an event that involves death, injury, or a threat to the physical integrity of another person; or learning about unexpected or violent death, serious harm, or threat of death or injury experienced by a family member or other close associate. The person's response to the event must involve intense fear, helplessness, or horror (or in children, the response must involve disorganized or agitated behavior). The characteristic symptoms resulting from the exposure to the extreme trauma include persistent reexperiencing of the traumatic event, persistent avoidance of stimuli associated with the trauma and numbing of general responsiveness, and persistent symptoms of increased arousal. The full symptom picture must be present for more than 1 month, and the disturbance must cause clinically significant distress or impairment in social, occupational, or other important areas of functioning.

AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 463 (4th ed.2000).

poses of medical diagnosis or treatment, even though the therapist is not a physician or nurse."); *Danaipour*, 386 F.3d at 297 ("Statements by young children amounting to disclosure to treating therapists that they have been abused by a member of their family are usually reasonably pertinent to treatment of the child."); *United States v. George*, 960 F.2d 97, 99 (9th Cir.1992) ("Sexual abuse involves more than physical injury; the physician must be attentive to treating the victim's emotional and psychological injuries, the exact nature and extent of which often depend on the identity of the abuser."); *Wilder*, 111 S.W.3d at 256–57. The record also supports a reasonable inference that J.B. understood that she needed to be truthful with Volet to receive proper treatment, and that the facts surrounding J.B.'s encounter with Taylor were reasonably pertinent to Volet's treatment of J.B. for her issues concerning the resolution of the sexual assault. *See* Tex.R. Evid. 803(4); *Burns*, 122 S.W.3d at 438; *Wilder*, 111 S.W.3d at 257; *Beheler*, 3 S.W.3d at 188–89. We therefore hold that the trial court did not abuse its discretion in admitting Volet's testimony under Rule 803(4).

### Extraneous Offense Instruction

In his second issue, Taylor contends that the trial court erred in failing to instruct the jury that extraneous offenses could not be considered unless the jury found beyond a reasonable doubt that Taylor committed the offenses. Specifically, Taylor maintains that he was entitled to the extraneous offense instruction because the trial court admitted evidence under Texas Rule of Evidence 404(b) that on the night of the sexual assault he fired a gun at Lazy, possessed and used cocaine, and provided cocaine to J.B. *See* Tex.R. Evid. 404(b). The State responds that the trial court was not required to include the requested instruction because the offenses

admitted in this case constitute "same transaction contextual evidence." *See Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim.App.2000).

When reviewing charge errors, an appellate court must undertake a two-step review: first, the court must determine whether error actually exists in the charge, and second, the court must determine whether sufficient harm resulted from the error to require reversal. *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim.App.1994); *Fulenwider v. State*, 176 S.W.3d 290, 298 (Tex.App.-Houston [1st Dist.] 2004, pet. ref'd). The standard to determine whether sufficient harm resulted from the charging error to require reversal depends upon whether appellant objected at trial. *Abdnor*, 871 S.W.2d at 732; *Fulenwider*, 176 S.W.3d at 298. Where there has been a timely objection made at trial, an appellate court will search only for "some harm." *Abdnor*, 871 S.W.2d at 732; *Fulenwider*, 176 S.W.3d at 298. By contrast, where the error is urged for the first time on appeal, a reviewing court will search for "egregious harm." *Abdnor*, 871 S.W.2d at 732; *Arline v. State*, 721 S.W.2d 348, 351–52 (Tex.Crim.App.1986); *Fulenwider*, 176 S.W.3d at 298.

An extraneous offense is defined as any act of misconduct, whether resulting in prosecution or not, that is not shown in the charging papers. *Rankin v. State*, 953 S.W.2d 740, 741 (Tex.Crim.App. 1996). Texas Rule of Evidence 404(b) provides:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, pro-

vided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

TEX.R. EVID. 404(b). If the defendant so requests at the guilt/innocence phase of trial, the trial court must instruct the jury not to consider extraneous offense evidence admitted for a limited purpose unless it believes beyond a reasonable doubt that the defendant committed the extraneous offense. *See George v. State*, 890 S.W.2d 73, 76 (Tex.Crim.App.1994); *Rodriguez v. State*, 137 S.W.3d 228, 230–31 (Tex.App.-Houston [1st Dist.] 2004, no pet.).

An offense, however, is not tried in a vacuum and the jury is entitled to know all relevant surrounding facts and circumstances of the charged offense. *Wyatt*, 23 S.W.3d at 25. Same transaction contextual evidence is therefore admissible without a limiting instruction, but only to the extent that it is necessary to the jury's understanding of the offense, and only when the offense would make little or no sense without also bringing in the same transaction evidence. *McDonald v. State*, 179 S.W.3d 571, 577 (Tex.Crim.App.2005); *Castaldo v. State*, 78 S.W.3d 345, 352 (Tex. Crim.App.2002); *Wesbrook v. State*, 29 S.W.3d 103, 114–15 (Tex.Crim.App.2000); *Wyatt*, 23 S.W.3d at 25; *Camacho v. State*, 864 S.W.2d 524, 532 (Tex.Crim.App.1993). Stated alternatively, same transaction contextual evidence is admissible when several offenses are so intermixed or connected as to form a single, indivisible criminal transaction, such that in narrating the one, it is impracticable to avoid describing the other. *McDonald*, 179 S.W.3d at 577; *Rogers v. State*, 853 S.W.2d 29, 33–34 (Tex.Crim. App.1993).

In this case, Taylor's extraneous offenses were so intertwined with the sexual assault that the jury's understanding of the sexual assault would have been obscured without them. *See McDonald*, 179 S.W.3d at 577; *Wyatt*, 23 S.W.3d at 25–26; *Rogers*, 853 S.W.2d at 33–34. The extraneous offenses all occurred closely in time to the sexual assault and a description of each offense was necessary to properly explain the sexual assault and the circumstances under which it took place. Taylor's encounter with Lazy demonstrated how Taylor ensured that J.B. was alone, and Taylor and J.B.'s cocaine use just before the sexual assault demonstrates that Taylor might have completed his crime by lowering J.B.'s inhibitions. The evidence that Taylor gave J.B. a bag of crack cocaine for Mom immediately after the sexual assault demonstrates that Mom might have set up the encounter between Taylor and J.B. as part of a drug deal. The sexual assault in this case would not have made sense without a description of the contextual evidence surrounding it, including Taylor's extraneous offenses. *See Wesbrook*, 29 S.W.3d at 115 (holding evidence that defendant committed three other homicides on night of charged homicide constituted same transaction contextual evidence); *Wyatt*, 23 S.W.3d at 26 (holding evidence that defendant sexually assaulted child before smothering it constituted same transaction contextual evidence); *Moreno v. State*, 195 S.W.3d 321, 327 (Tex. App.-Houston [14th Dist.] 2006, pet. ref'd) (holding evidence that defendant completed several other drug deals in days before charged offense constituted same transaction contextual evidence); *Nguyen v. State*, 177 S.W.3d 659, 667 (Tex.App.-Houston [1st Dist.] 2005, pet. ref'd) (holding evidence that defendant was involved in homicide was same transaction contextual evidence to charged offense of insurance fraud); *Heiman v. State*, 923 S.W.2d

622, 626 (Tex.App.-Houston [1st Dist.] 1995, pet. ref'd) (holding evidence that defendant injected cocaine into himself and victim at time of offense of indecency with child constituted same transaction contextual evidence). We therefore hold that the trial court did not err in denying Taylor's request for an extraneous offense instruction in the jury charge.

## Conclusion

We hold that (1) the trial court did not abuse its discretion in admitting Volet's hearsay testimony under Texas Rule of Evidence 803(4), and (2) the trial court did not err in denying Taylor's request for an extraneous offense instruction in the jury charge because the extraneous offenses in this case constitute same transaction contextual evidence. We affirm the judgment of the trial court.

Justice JENNINGS, concurring.

TERRY JENNINGS, Justice, concurring.

The majority errs in holding that the trial court did not err in admitting the hearsay statements of the complainant relating the details of the sexual assault in this case through the testimony of Denise Volet, a "licensed professional counselor." However, because the trial court's error in admitting the hearsay statements through Volet's testimony was harmless, I concur in the judgment of this Court.

### Medical Diagnosis or Treatment

The majority agrees with the State that the complainant's hearsay statements were admissible through the testimony of Volet under the exception to the hearsay rule for statements "made for purposes of medical diagnosis or treatment." *See* TEX.R. EVID. 803(4). Texas Rule of Evidence 803(4), entitled "Statements for Purposes of Medical Diagnoses or Treatment," articulates the exception to the hearsay rule as follows:

> Statements made for purposes of *medical* diagnosis or treatment *and* describing *medical* history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

*Id.* (emphasis added). To qualify for this exception, a statement must meet three requirements. First, the statement must, in no uncertain terms, be made for "medical" diagnosis or treatment. *Id.* Second, the statement must describe medical history, past or present "symptoms, pain, or sensations," or "the inception or general character of the cause or external source thereof." *Id.* Third, the statement must be "reasonably pertinent" to such medical diagnosis or treatment. *Id.*

The majority recognizes that Rule 803(4) "is premised on the declarant's desire to receive an appropriate *medical* diagnosis or treatment" and that Volet is not a medical doctor or psychiatrist and does not work under the supervision of a medical doctor or psychiatrist. Nevertheless, the majority concludes that Volet's testimony about the complainant's hearsay statements, given Volet's status as a "licensed professional counselor," falls under the hearsay exception of Rule 803(4).

In doing so, the majority expressly disagrees with the "narrow application of Rule 803(4)" by the Austin Court of Appeals, which has held that Rule 803(4) "clearly requires the statements by the declarant be made for purposes of *medical* diagnosis or treatment." *Perez v. State,* 113 S.W.3d 819, 830 (Tex.App.-Austin 2003, pet. ref'd) (emphasis added); *see also Moore v. State,* 82 S.W.3d 399, 405 (Tex. App.-Austin 2002, pet. ref'd). In *Moore,*

the court held that a trial court erred in admitting testimony about hearsay statements through an individual who was a "licensed psychotherapist," licensed "clinical social worker," and an "advanced clinical practitioner." 82 S.W.3d at 405. In *Perez*, the court held that a trial court erred in admitting testimony about hearsay statements through a "licensed professional counselor" like Volet. 113 S.W.3d at 828–30.

Rejecting the reasoning of the Austin Court of Appeals, the majority follows the Texarkana and Beaumont courts of appeals, which have held that such testimony from licensed professional counselors and psychotherapists meets the requirements of Rule 803(4). *See Wilder v. State*, 111 S.W.3d 249, 256–57 (Tex.App.-Texarkana 2003, pet. ref'd); *Puderbaugh v. State*, 31 S.W.3d 683, 685 (Tex.App.-Beaumont 2000, pet. ref'd); *Gohring v. State*, 967 S.W.2d 459, 461 (Tex.App.-Beaumont 1998, no pet.). However, the reasoning of these cases has been criticized:

> Recently, Texas courts have begun admitting statements made by child sexual or physical assault complainants to various therapists and child advocacy centers workers, but *this use stretches the rule beyond its original scope and purpose.*

CATHY COCHRAN, TEXAS RULES OF EVIDENCE HANDBOOK, art. VIII, at 839 (6th ed.2005) (emphasis added).

The scope and purpose of the Rule 803(4) exception to the hearsay rule has been explained as follows:

> The rationale behind this exception is that patients who are seeking *medical help* generally do not lie or exaggerate about their *physical condition*. Because *proper medical treatment* depends on a *reliable diagnosis*, patients have a strong motivation to be truthful. Unless the record shows that the declarant was

*actually seeking a medical diagnosis* or treatment, however, statements made to medical personnel are not admissible under the rule.

*Id.* at 837 (emphasis added). By its very definition, the term "medical" relates to or characterizes "the study or practice of medicine" or "requiring treatment by medicine." THE AMERICAN HERITAGE STEDMAN'S MEDICAL DICTIONARY 497–98 (2002). "Psychology," on the other hand, deals with "mental processes and behavior" and the "emotional and behavioral characteristics of an individual, a group, or an activity." *Id.* at 687. A "counselor" is one trained to give "guidance" and "advice" about "personal, social, or psychological problems." THE NEW OXFORD AMERICAN DICTIONARY 390 (1st ed.2001). The rationale behind the hearsay exception for statements made for purposes of "medical diagnoses or treatment" regarding a patient's physical condition simply has nothing to do with mental processes and behavior or the providing of guidance and advice by a counselor.

Here, just as in *Perez*, the complainant's statements were made "during an extended period of counseling and did not possess the guarantees of trustworthiness on which the medical diagnosis and treatment exception to the hearsay rule is founded." 113 S.W.3d at 827. "Being a state-licensed professional counselor does not authorize the individual to practice medicine as defined by the laws of this state." *Id.* at 829. Moreover,

> "Rule 803(4) is premised on the patient's selfish motive in receiving appropriate treatment." This motive is no longer present once a diagnosis has been made and treatment has begun. The details a patient may report during an extended course of treatment may be prompted by other motives, such as denial or deception, or be influenced by the treatment process itself.

*Id.* at 830 (quoting *Jones v. State*, 92 S.W.3d 619, 623 (Tex.App.-Austin 2002, no pet.)) (internal citations omitted).

The bottom line is that the complaint's statements to Volet do not meet any of the three requirements of Rule 803(4). They were not made for "medical" diagnosis or treatment. The statements do not describe medical history, "symptoms, pain, or sensations," or "the inception or general character of the cause or external source thereof." Moreover, they are not "reasonably pertinent" to "medical" diagnosis or treatment. Accordingly, I would hold that the trial court erred in admitting the hearsay statements of the complainant through the testimony of Volet, and the majority errs in holding otherwise.

## Harmless Error

A violation of evidentiary rules that results in the erroneous admission of evidence is non-constitutional error. *See* Tex. R.App. P. 44.2(b); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998). Any non-constitutional error that "does not affect substantial rights must be disregarded." Tex.R.App. P. 44.2(b). A substantial right is affected when an error has a substantial and injurious effect or influence in determining a jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim. App.1997). Therefore, a criminal conviction should not be overturned for non-constitutional error if the appellate court, upon examining the record as a whole, has fair assurance that the error did not influence the jury, or had but slight effect. *Cobb v. State*, 85 S.W.3d 258, 272 (Tex. Crim.App.2002). Generally, the improper admission of evidence does not constitute reversible error if the same facts are proved by other properly admitted evidence. *See Brooks v. State*, 990 S.W.2d 278, 287 (Tex.Crim.App.1999) (holding that any error in the admission of hearsay testimony was harmless in light of other properly admitted evidence proving same fact).

Appellant argues that he was harmed by the trial court's error in admitting Volet's testimony regarding the complainant's hearsay statements because the State used it to bolster the credibility of the complainant. He asserts that the State referred to Volet's testimony in its closing argument to the jury and argued that the complainant "told a consistent story." Appellant concedes that the court in *Perez* found the admission of a counselor's testimony about the hearsay statements of a complainant to be harmless. *See* 113 S.W.3d at 831. However, he argues that *Perez* is distinguishable.

Here, much of Volet's testimony did concern her observations of the complainant. *See id.* However, unlike the counselor in *Perez*, Volet actually testified about the complainant's hearsay statements regarding the sexual assault offense. *See id.* Moreover, the only other evidence in the record to support appellant's conviction was the direct evidence offered by the complainant herself. Nevertheless, the record as a whole provides fair assurance that the trial court's error did not influence the jury or had but slight effect.

The State, in arguing about "the factors that weigh[ed] in favor" of the complainant's credibility, did mention that the jury "heard from" the complainant's therapist and that the complainant had not changed her "story." However, the State explained that the complainant told her version of events "over and over again" to different agencies, "law enforcement," and the jury itself. The State's point was that if the complainant had changed her story, the jury would have "heard about it" and her testimony would "have been impeached." Moreover, the State also argued that Volet testified that the complainant showed "the

signs and symptoms of a child who has been sexually abused," and this evidence is generally admissible if supported by reliable expert testimony. *See Hernandez v. State,* 53 S.W.3d 742, 751 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd).

Accordingly, I cannot say that the trial court's error had a substantial and injurious effect or influence on the jury in reaching its verdict. *See King,* 953 S.W.2d at 271.

### Conclusion

I would hold that the trial court erred in admitting the hearsay statements of the complainant about the details of the sexual assault in this case through the testimony of a "licensed professional counselor." However, because the trial court's error in doing so was harmless, I concur in the judgment of this Court.