

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00084-CR

HUBERT JAMES STANLEY                                          APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

### FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY
### TRIAL COURT NO. 1437974D

----------

## MEMORANDUM OPINION[1]

----------

Hubert James Stanley raises seven issues in an appeal from his conviction and 42-year sentence for continuous sexual abuse. *See* Tex. Penal Code Ann. § 21.02 (West Supp. 2017). We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## Exclusion of Complainant's Prior Statements to Prosecutors

In his first point,[2] appellant contends that the trial court erred by excluding a document describing the complainant's prior statements to prosecutors, which appellant contends was admissible for impeachment purposes as a prior inconsistent statement or as an exception to the rule excluding hearsay as either (1) a record regularly kept in the course of business or (2) an admission of a party opponent. *See* Tex. R. Evid. 613(a), 801(e)(2), 803(6).

Much of Lynn's[3] testimony at trial focused on how many times appellant either touched or penetrated her sexual organ over an approximately five-year period. She testified that appellant touched her sexual organ for the first time when she was attending the school at which she completed second through fourth grades.[4] She also testified that appellant "touch[ed] her inappropriately" when she was in the fifth grade and the sixth grade. She further testified that during the summer of 2014, he touched her sexual organ at his girlfriend's apartment. Although Lynn did not testify how many times appellant did so there, we can reasonably infer she meant multiple times because she said when it happened "he *would come* in [her bedroom] in the mornings." [Emphasis added.]

---

[2]Because a recitation of the background facts is not necessary to contextualize appellant's arguments, we will set forth the pertinent facts in our discussion of appellant's individual points.

[3]In this opinion, we will use the pseudonym Lynn to protect the complainant's identity.

[4]Lynn was sixteen at the time of trial.

Lynn also testified that appellant had penetrated her at least twice later that summer after he had moved into his own apartment. When the prosecutor asked the complainant, "During all those years, . . . how many times did he touch your vagina and/or penetrate your vagina," the complainant answered, "Like around 15 times." She also testified that from the time the touching began to the time it ended, appellant digitally penetrated her no more than four times.

On cross-examination, appellant's counsel asked Lynn if she remembered talking to two lawyers two different times in 2016; she stated that she did talk to them. Appellant's counsel then asked her,

> Q. . . . And in that event you told them that the abuse happened almost every day. Do you remember saying that?
>
> A. No, sir.
>
> Q. You don't remember telling -- okay. If they said that's what you said, would that -- does that sound accurate?
>
> A. No, sir.

After asking a few more questions, appellant's counsel again asked her,

> Q. And you also told them that the abuse happened every day for two weeks before it spaced out. Do you recall saying that?
>
> A. Yes, sir.
>
> Q. Is that accurate?
>
> A. Yes, sir.
>
> Q. Every day?
>
> A. Except the weekend.

Q. Except the weekend. So weekdays every day?

A. Yes, sir.

Q. For two weeks?

A. (Nods head up and down.)

During appellant's case-in-chief, he called the criminal courts manager for the Tarrant County District Clerk's office as a witness and questioned her about a copy of a "State's Brady Notice" that had been filed in the clerk's record, which read, in pertinent part:

> The victim in this case [Lynn] met with prosecutors . . . on February 11th, 2016. In that meeting [she] stated that . . . the touching in the summer of 2014 was almost every day. . . . In the October meeting [Lynn] stated that the defendant began the summer of 2014 touching her inappropriately every day for two weeks and then it spaced out.

In attempting to lay a predicate for admission of this record, Defendant's Exhibit 1, appellant asked the manager if she could identify the criminal case file, and she answered affirmatively. She also agreed that she "manage[s] the contents of the files in each case." Regarding the case file, the manager testified as follows:

> Q. And . . . that file contains all of the documents that have been filed through your -- the clerk's office in this case, correct?
>
> A. Yes.
>
> Q. And are they filed chronologically, normally?
>
> A. Numerically, yes.

Q. Can you see in the file there a document filed October the 25th, 2016, entitled, State's Brady Notice? . . . .

. . . .

A. Okay.

Q. And is this a document that is kept in the regular course of business for the clerk's office?

A. Yes.

Q. Do you know if this record was made at or near the time by information of someone with knowledge, do you know?

A. Repeat the question?

Q. Sure. Do you know if this record -- well, do you know if this document was filed as soon as you got it, I guess?

A. Yes.

Q. And this record is kept in the course of a regularly conducted business activity?

A. Yes.

Q. And making the record was a regular practice of that -- of the activity of the clerk's office?

A. Yes. We file-mark it when we receive it. It is timed and initialed by the deputy that filed it, and it is scanned and placed in the court's file.

Q. . . . Ma'am, I'm going to show you a copy of the document, which I believe you're looking at, and just kind of see if it appears to be the same as the document you're looking at.

A. Yes.

Q. Does it appear to be any alterations, deletions or changes to the document?

A. No.

Q. Would you agree that it's a fair and accurate copy of the original that you have in the file?

A. Yes.

Q. Okay.

Appellant's counsel then offered the exhibit, but the State objected:

[State's counsel]: Your Honor, we object. First of all, he didn't lay the proper business records predicate. In addition, I believe he's offering this under Rule 613, extrinsic evidence with regard to a prior inconsistent statement. Defendant's Exhibit 1 deals with a statement that the witness [Lynn] on the witness stand admitted to making. So she did not deny the statement, and it's already in evidence, and this would be cumulative. And it says under extrinsic evidence that it doesn't come in unless the witness denied it, and she didn't deny it. She admitted to it.

THE COURT: All right. Let me look at it.

[Appellant's counsel]: . . . First off, the witness did deny portions of that affidavit -- of that record when I asked her under oath. So this would be a prior inconsistent statement and also an exception to hearsay under 803(6) being a regular -- records of a regular[ly] conducted business record.

THE COURT: Tell me your objection again.

[State's counsel]: Yes, Your Honor. In addition to it not being properly redacted, Rule 613, which deals with prior inconsistent statements, it lists a foundation requirement when you ask the witness about the statement and then you give the witness a chance to admit to having made the prior inconsistent statement or denying it. The witness in this case admitted to it.

And then we get to extrinsic evidence, such as this document, and it says extrinsic evidence of a witness's prior inconsistent statement is not admissible unless the witness is first examined about the statement, that happened here, and then it says, and then

6

fails to admit making the statement. She admitted making the statement.

[Appellant's counsel]: I would take issue, Your Honor. She clearly -- I took notes. She did not admit to the statement. And so this is a prior inconsistent statement. It's also -- like I say, it's a hearsay exception.

Appellant did not urge that his Confrontation Clause right to confront witnesses would be curtailed by the exclusion of the evidence, nor did he argue that the evidence was admissible under any other hearsay exception.[5]

## A. Confrontation Clause and Other Evidentiary Arguments not Preserved

Appellant argues as part of his harm analysis that the trial court's exclusion of the evidence violated his Confrontation Clause rights. To the extent that appellant relies on this argument to show error in the exclusion of Defendant's Exhibit 1, he did not preserve that complaint. *See Leza v. State*, 351 S.W.3d 344, 360–61 (Tex. Crim. App. 2011) (holding that appellant failed to preserve constitutional argument raised on appeal because "he never alerted the trial court in any way that exclusion of the statement would violate any federal constitutional right"); *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) ("Because [appellant] 'did not clearly articulate' that the Confrontation Clause demanded admission of the evidence, the trial judge 'never had the opportunity to rule upon' this rationale."). For the same reason, he did not preserve a complaint that the evidence was admissible under any hearsay exception other than the rule 803(6)

---

[5]Although appellant did not offer the *Brady* notice to show that Lynn's statements to the prosecutors were true, he did offer it as proof that she had made those statements to the prosecutors.

7

business records exception. *See Reyna*, 168 S.W.3d at 177–78 (explaining evidence proponent's responsibility to inform trial judge why evidence is admissible); *Taylor v. State*, 263 S.W.3d 304, 309 (Tex. App.—Houston [1st Dist.] 2007) ("The proponent of hearsay testimony must point to a hearsay exception before the court can admit such testimony."), *aff'd*, 268 S.W.3d 571 (Tex. Crim. App. 2008); *see also* Tex. R. Evid. 801(e)(2).

**B. Even if Exclusion of Evidence Abuse of Discretion, Error Harmless**

We need not decide whether the trial court abused its discretion by excluding the exhibit for the failure to lay a proper predicate under either rule 613(a) or rule 803(6) because, even assuming the trial court did so, the record does not show that any error affected appellant's substantial rights. *See* Tex. R. App. P. 44.2(b); *Celis v. State*, 369 S.W.3d 691, 697 (Tex. App.—Fort Worth 2012, pet. ref'd), *abrogated in part on other grounds by Meadows v. State*, 455 S.W.3d 166 (Tex. Crim. App. 2015); *cf.* 1 Steven Goode et al., *Texas Practice Series: Guide to the Rules of Evidence* § 613.4 (4th ed. May 2018 update) (noting that party need not lay proper foundation under rule 613 when offering relevant statements that are independently admissible under some other hearsay exception and are being offered as substantive evidence).

As appellant points out in his brief, if the damaging potential of the excluded evidence were fully realized, the jury would have been informed that Lynn gave differing accounts of how many times appellant had touched her to

different people. But appellant was able to elicit the same testimony from Lynn on cross-examination:

• Lynn admitted telling a police officer that the abuse had happened "about three years" before trial and that this statement was different from her testimony that she believed the abuse had happened about five years before trial when she was nine or ten;

• Lynn agreed that if she had told the CPS investigator that the abuse happened five times, that statement would have been incorrect because she was "telling th[e] jury . . . it's happened at least 15 times";

• Lynn admitted that she told the forensic interviewer that appellant never said anything during the incidents but that she had told the jury that he had once told her he loved her and that those two statements were "contradictory";

• Lynn admitted telling the forensic interviewer that the incidents occurred "more than five times but less than ten," which was also "contradictory to . . . telling the jury it happened more than 15 times";

• Lynn admitted that she told the forensic interviewer and hospital staff that appellant had never shown her pornography but that she had told the two prosecutors he had done so twice on the same day; and

• Lynn admitted failing to tell the CPS investigator about one of the locations where the abuse had occurred.

9

Although Lynn denied that her different statements were "inconsistent,"[6] appellant's counsel nevertheless was able to elicit testimony from Lynn that she had made some "contradictory" statements about how many incidents had occurred as well as about other details of the abuse. The jury had ample opportunity to consider and weigh Lynn's credibility in light of these contradictory statements. And appellant's counsel was able to emphasize those contradictory statements during his closing argument. Accordingly, we hold that even if the trial court abused its discretion by excluding the evidence, any error was harmless. *See Anderson v. State*, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986) ("Inadmissible evidence can be rendered harmless if other evidence at trial is admitted without objection and it proves the same fact that the inadmissible evidence sought to prove."); *Celis*, 369 S.W.3d at 697 (holding that Celis was not harmed under constitutional-error standard of review by exclusion of impeachment evidence of witness's 30-year DWI history when other evidence of witness's DWI history and drinking problem was presented to jury and Celis was able to cross-examine her about that evidence).

We therefore overrule appellant's first point.

---

[6]Arguably, Lynn's statements to the prosecutors were not inconsistent with her trial testimony. Lynn did not testify that appellant touched her sexual organ every time he touched her in the summer of 2014. She also testified that sometimes he just kissed her, rubbed her thigh, or touched her breasts. *See* Tex. Penal Code Ann. § 21.02(c) (excluding such acts from scope of continuous sexual abuse offense).

## Admission of 40-Year-Old Extraneous Offense

In his second point, appellant complains that the trial court abused its discretion by admitting evidence over his rule 403 objection about a 40-year-old extraneous offense that appellant committed against a family member. Tex. R. Evid. 403. Specifically, the trial court allowed one of appellant's family members to testify that when she was 11 or 12 years old,[7] she was asleep in her bed in the middle of the night when she was awakened by appellant, who had come into the bedroom, lifted her nightgown, lowered her underwear, and touched her vagina. He fled when she jumped up from her bed.

Appellant objected to the testimony because (1) "it's very remote in time," (2) "there's nothing else to back [it] up," (3) "it's not reliable [or] trustworthy," and (4) "it's inadmissible under 38.37." The trial court overruled the objection. Appellant argues on appeal that this objection was sufficient to preserve a rule 403 complaint and that the trial court erroneously admitted the evidence in contravention of rule 403. We conclude that appellant did not raise a 403 complaint at trial; therefore, because his argument on appeal does not comport with his trial objection, we may not reach its merits. *See Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial.").

---

[7]The family member was in her early fifties at the time of trial.

11

A trial court should exclude even relevant evidence under rule 403 "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403; *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). As the court of criminal appeals has explained:

> "Unfair prejudice" refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one. Evidence might be unfairly prejudicial if, for example, it arouses the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence.
>
> "Confusion of the issues," refers to a tendency to confuse or distract the jury from the main issues in the case. Evidence that consumes an inordinate amount of time to present or answer, for example, might tend to confuse or distract the jury from the main issues. "Misleading the jury," refers to a tendency of an item of evidence to be given undue weight by the jury on other than emotional grounds. For example, "scientific" evidence might mislead a jury that is not properly equipped to judge the probative force of the evidence. "Undue delay" and "needless presentation of cumulative evidence" concern the efficiency of the trial proceeding rather than the threat of an inaccurate decision.

*Casey*, 215 S.W.3d at 879–80 (citations omitted). Appellant's trial objection did not include any of these complaints.

An objection that an extraneous offense is too remote in time—and therefore too unreliable and untrustworthy—to be probative calls into question whether the evidence is relevant. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2 (West 2018) (allowing extraneous evidence of certain sexually-oriented offenses to be admitted in a continuous sexual abuse trial, notwithstanding rules 404 and 405 of evidence, "for any bearing the evidence has on relevant matters, including

12

the character of the defendant and acts performed in conformity with the character of the defendant"); Tex. R. Evid. 401–02, 404(b); *Plante v. State*, 692 S.W.2d 487, 490–91 (Tex. Crim. App. 1985) (explaining effect remoteness of extraneous offenses has on probative value). An objection to relevance is not sufficient to preserve a complaint that evidence is inadmissible under rule 403. *See Montgomery v. State*, 810 S.W.2d 372, 388 (Tex. Crim. App. 1990) (op. on reh'g); *Lopez v. State*, 200 S.W.3d 246, 251 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). Likewise, an objection that evidence is not admissible under article 38.37 of the code of criminal procedure does not preserve a rule 403 complaint. *See Hitt v. State*, 53 S.W.3d 697, 706 (Tex. App.—Austin 2001, pet. ref'd) ("When evidence of a defendant's extraneous acts is relevant under article 38.37, the trial court is still required to conduct a Rule 403 balancing test upon a proper objection or request."). Finally, to the extent that appellant's trial objection included a complaint that the witness lacked credibility, it likewise did not preserve a complaint under rule 403. *Cf. Hogan v. State*, 440 S.W.3d 211, 213-14 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (explaining difference between determining whether witness is competent to testify, which trial court may resolve, and determining whether witness is credible, which is the factfinder's duty).

Because appellant's complaint on appeal does not comport with his trial objection, we overrule his second point. *See* Tex. R. App. P. 33.1(a)(1); *Lovill*, 319 S.W.3d at 691–92.

## Admission of Similar Extraneous Offense

In his third point, appellant argues that the trial court failed to consider the threshold admissibility requirements of article 38.37 in admitting testimony from a relative of Lynn's, Sara,[8] that appellant had performed similar acts on her when she was a child.

In a hearing outside the jury's presence, Sara testified that when she was a child, appellant had touched her sexual organ on numerous occasions.  When asked if she remembered "instances of this happening," Sara answered, "Not clearly."  But when asked to tell about one of the instances, Sara stated, "I can't remember how old I was, but I remember I was in my room one day and he came into my room[;] it was late at night, and [he] got in the bed and started touching me."  She then went on to give a detailed account of what appellant had done that night.  Although Sara could not recall how long the particular act lasted, she testified that appellant did the same thing to her about five to ten times.  The abuse stopped when Sara's mother came home from work one day and saw appellant in bed with Sara.

On cross-examination, Sara reiterated that she did not remember how old she was when appellant first touched her sexual organ.  When asked whether, "would it be fair to say, [a lot of this] is pretty hazy to you," Sara answered, "I wouldn't say hazy."  She again testified that she could only estimate her ages

---

[8]Sara is also a pseudonym.

when the abuse started and stopped but that it happened over an approximately eight-year period.

After the hearing, the trial judge ruled that he would "allow all the testimony." Appellant objected as follows:

> [Appellant's counsel]: Your Honor, I would object to this in that we feel that it's unreliable. She couldn't remember -- she said herself that it wasn't clear. She couldn't verify this information, even after her mother actually saw her. There was no report made. There's nothing to verify this. We object that it's untrustworthy and unreliable.
>
> THE COURT: And, of course, you can do all those things in cross-examining her in front of the jury that you did in front of me.
>
> . . . .
>
> THE COURT: It's up to the jury to determine the credibility the witness gives. All I'm determining is that I believe it's admissible.

On appeal, appellant contends that the trial court abused its discretion by admitting the evidence without first determining that it was "adequate to support a finding by the jury that [he had] committed the separate offense beyond a reasonable doubt," as required by article 38.37, § 2-a(1). Tex. Code Crim. Proc. Ann. art. 38.37, § 2-a(1). According to appellant, here,

> the trial judge – though he conducted the required hearing – explicitly refused to decide whether the evidence reached the credibility threshold of proof-adequacy demanded by section 2-a. Specifically, by refusing to consider the 'credibility' of the witness, the judge passed on the mandate to consider whether a juror *could find* [Sara's] testimony to be true beyond a reasonable doubt.

Thus, appellant's argument on appeal is that the trial judge is required to pass on a witness's credibility in making a threshold determination of admissibility under article 38.37, § 2-a(1).

To the extent that appellant's complaint on appeal comports with his trial objection, we reject his argument. It is the sole province of the factfinder—the jury in this case—to determine whether a witness is credible. *See Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). Rather, in making an article 38.37 threshold admissibility determination, the trial court must determine whether, if the jury were to believe the witness's testimony, that testimony would be sufficient to prove the commission of an extraneous offense beyond a reasonable doubt. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2-a(1). Sara's testimony alone is sufficient to prove an offense. *See Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978); *Lawson v. State*, No. 02-17-00201-CR, 2018 WL 1192478, at *5 (Tex. App.—Fort Worth Mar. 8, 2018, no pet.) (mem. op., not designated for publication). Thus, we conclude that the trial court did not abuse its discretion by admitting Sara's testimony and allowing the jury to determine whether it was ultimately credible. *Cf. Ruiz v. State*, No. 10-16-00247-CR, 2018 WL 1750826, at *7 (Tex. App.—Waco Apr. 11, 2018, pet. filed) (mem. op., not designated for publication) (holding that even if trial court wholly failed to conduct article 38.37 hearing to determine admissibility of extraneous offense evidence, error would be harmless because trial court had instructed the jury "to consider the complained-of evidence only if the State had proved [the

16

extraneous offenses] beyond a reasonable doubt, and because Ruiz [did] not point[] to evidence demonstrating that the jury failed to follow the charge instructions").

We overrule appellant's third point.

**Denial of Challenges for Cause**

In appellant's fourth through seventh points, he contends that the trial court erroneously denied his challenges for cause to four different jurors. We overrule all four points because regardless of the merits of appellant's complaints, he cannot show harm.

To establish harm from an erroneous denial of a challenge for cause to a prospective juror, a defendant must show on the record that (1) he asserted a clear and specific challenge for cause, (2) he used a peremptory challenge on the complained-of venire member, (3) he exhausted his remaining peremptory challenges and requested but was denied additional peremptory strikes, and (4) he identified on the record the objectionable juror he would have removed with the additional strike. *See Comeaux v. State*, 445 S.W.3d 745, 747, 749–50 (Tex. Crim. App. 2014). This procedure allows the defendant to show that he needed the additional peremptory strike that he was forced to use on a biased juror and gives the trial judge an opportunity to correct any error. *See id.* at 750.

Although the record shows that appellant challenged each of the complained-of prospective jurors for cause and was requested but denied additional peremptory strikes, it does not show whether he used a peremptory

17

strike on any of these four prospective jurors, nor does it show that appellant identified any objectionable juror on which he would have used an additional peremptory strike. In fact, when the trial judge read the names of the selected panel, appellant's counsel answered, "That's fine, Your Honor." Accordingly, we overrule appellant's fourth through seventh points because he cannot show harm. *See Daniel v. State*, 485 S.W.3d 24, 34 (Tex. Crim. App. 2016).

## Conclusion

Having overruled all of appellant's points, we affirm the trial court's judgment.

/s/ Wade Birdwell
WADE BIRDWELL
JUSTICE

PANEL: WALKER, KERR, and BIRDWELL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: June 28, 2018